ACKERMAN *et al.* v. ASTORIA VENEER MILLS & LUMBER CO.

*(Supreme Court, General Term, First Department.* October 24, 1890.)

CONTRACTS—PERFORMANCE—WAIVER.

By contracts in writing, defendant sold to plaintiffs lumber at a certain price, "f. o. b. Louisville, Ky." After part of it had been delivered and paid for, disagreements arose between the parties, plaintiffs claiming a credit of 10 days after delivery, and alleging an understanding to that effect, while defendant insisted that the price was payable on shipping the lumber at Louisville, and refused to deliver unless cash was paid there. Plaintiffs continued to negotiate with defendant for further deliveries, which they did not obtain. In an action for breach of the contracts, plaintiffs' testimony was that they claimed a credit only for the time required for lighterage and inspection, which would be about 10 days, but defendant's evidence tended to prove a requirement of an absolute credit of 10 days. The jury found for defendant. *Held* that, if plaintiffs had a right of action for defendant's refusal to deliver without cash payment, it had been waived by their subsequent negotiations; and, as the contracts gave them no right to an absolute credit, without which, as the jury found, they were not willing to receive the lumber, the judgment for defendant should be affirmed.

Appeal from circuit court, New York county.

Action by John E. Ackerman and John F. Rodman against the Astoria Veneer Mills & Lumber Company for breach of contracts for the sale and delivery of lumber by defendant to plaintiffs. At the trial before a jury, no exceptions were taken by plaintiffs. The verdict was for defendant. From the judgment entered thereon, plaintiffs appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Ewing & Southard* and *Ben L. Fairchild,* for appellants. *Foster & Stephens,* (*George W. Stephens,* of counsel,) for respondent.

DANIELS, J. The object of this action was the recovery of damages for the non-performance of two contracts for the delivery of walnut lumber by the defendant to the plaintiffs. The contracts were in writing, and they were made in the year 1887. The first of these contracts is in the following words and figures:                    "NEW YORK, June 27, 1887.

"We have this day sold to J. E. Ackerman & Co. the following shipping walnut for delivery at any time or times during the next six months, the shipments to be commenced as soon as possible after this date, in any quantities, the price to be $90 per thousand feet, less 2%, f. o. b. Louisville, Ky.:

| | | | |
|---|---|---|---|
| 50,000 feet, | 1 inch, | | 10 inches and over |
| 20,000 " | 1½ " | | wide; 12 feet and |
| 20,000 " | 2 " | | up long. |
| 5,000 " | 2½ " | | |
| 15,000 " | 3 " | | |
| 15,000 " | 4 " | | |

125,000 "

"ASTORIA VENEER MILLS & LUMBER CO.
"W. H. WILLIAMS, Manager."

The second consisted of a proposal made by the defendant to the plaintiffs on the 28th of September, 1887, for the sale of 170,000 feet of walnut lumber, to be delivered, on or before the 1st of April, 1888, for the prices therein mentioned, and on terms in other respects similar to those contained in the first agreement. This proposal was accepted in writing on the following day by the plaintiffs, but none of the lumber mentioned in it was at any time delivered to the plaintiffs. After the making of the first contract, three consignments of the lumber mentioned in it were made by the defendant to the plaintiffs, and paid for by the latter. The consignments included about 36,000 feet, the last having been made on the 18th of November, 1887, leaving much the larger part of the contract unperformed. It was alleged by the plaintiffs that the defendant had refused to proceed further in the performance of either contract, and had thereby become liable in damages to the plaintiffs. To support this allegation, evidence was given showing disagreements to have arisen between the parties concerning their rights and obligations under the agreements, but more especially relating to the performance of the first one that was made. The claim was advanced by the plaintiffs that they were entitled to, and that there had been an understanding that they should have, 10 days after the delivery of the lumber at the city of New York to pay the price of each consignment delivered. This was denied by the defendant, whose agents insisted that the price of each consignment became payable at the yard, or as soon as it was laden upon the cars, at the city of Louisville. Precisely when this position was first taken by the defendant was not shown by the evidence, but it surely appeared as early as the letter of the 5th of November, 1887, was received by the plaintiffs, for in that letter it was stated by the writer, who subscribed himself the manager *pro tem.* of the defendant, that he had consulted with Mr. Williams, who was the general manager of the company, and was informed by him "that, when the contract was made, it was understood to be spot cash." And in a letter written to the plaintiffs on the 9th of the same month, and subscribed by Mr. Williams, this passage is contained: "As I told Mr. Ackerman at the time he visited us that there was some slight feeling on the part of the company as regards payments, it is useless for you to argue this matter with them, as I know of my own knowledge that they will insist on payment in yard at Louisville." Neither letter contained a direct refusal to deliver without payment being first made at Louisville, while both evinced that to be clearly the final design. And as no date has been given to the interview at the branch office between Mr. Williams and Mr. Rodamor, one of the plaintiffs, it is reasonably to be inferred that it took place after these letters; for in that interview still more positive ground was taken as to this claim than had been disclosed in the letters. At that time, Mr. Williams testified: "I positively refused to deliver them another inch of goods without the cash was paid in Louisville, under any circumstances." And, if this had been accepted as final and decisive by the plaintiffs, it would have supported their action for damages, provided the contracts should be construed to entitle the defendant to payment only after the consignment arrived at New York, and was there examined and accepted by the plaintiffs. But they did not act upon it as a termination or breach of the defendant's obligations under the contracts. They continued, on the contrary, to deal with the agents of the defendant for the further delivery of lumber on their own terms, to which there was a refusal to accede on the part of the defendant. At the time of this refusal, the same witness continued his testimony by adding that, "They simply wanted to get the goods, and I notified them again to go down to Louisville. There was some eighty thousand feet ready there." And at the same time he stated that there was a car-load at New York which this partner wanted delivered, and wanted 10 days on it. But the witness refused to deliver it, and said that he was going to keep it till paid for. And this condition of the affairs of the parties seems

to have continued until a later and final interview took place between the same partner and Mr. Rodman, who was the defendant's agent or broker, at the city of New York. His testimony was that this was probably 60, or perhaps 30, days after the last delivery, which would make the time about the 18th of December, 1887, or of January, 1888. His evidence was that at that time Mr. Rodman said "he would not accept any more unless he had ten days' credit on it after its delivery in New York." And "I said I declined to go on with that contract, my share of it," which seems to have terminated the interview. After that the plaintiffs, by letter of the 22d of March, 1888, made further overtures and proposals after, as it was stated, an interview with Mr. Williams, in which they wrote that they wanted the lumber badly, and "would be perfectly willing to make any reasonable compromise that might be mutually satisfactory, whereby a later date might be named for the completion of the same. That we are ready and willing to receive and pay for the lumber within ten days after arrival and inspection here, and that if a compromise date was agreed upon, we would receive the lumber as fast as desirable." But no action was taken on this letter resulting in any change of the situation. And this letter, as well as the evidence of Mr. Rodman, confirms the probability that the plaintiffs did insist on this credit of 10 days. He testified that it was to include no more than the time required for lighterage and inspection of the lumber, which would consume about that period. But the defendant's evidence tended to prove the requirement to be for an absolute credit of 10 days, irrespective of these acts, and after the delivery should become complete. Who was right in this disagreement it was for the jury to decide, and they determined the scale in favor of the defendant, thereby finding that the plaintiffs were not willing to receive the lumber without a credit for the price of a fixed period of 10 days after its delivery. Neither contract gave them the right to that credit, and the refusal to receive the lumber otherwise was a refusal to perform; and, as the plaintiffs did not elect to stand upon the preceding refusal of the defendant to send the lumber forward, without the payment of its price at Louisville, but continued to deal and negotiate with the agents of the defendant for a different adjustment of their differences, and maintained the contracts as still subsisting, invoking performance on their own understanding of them, they lost their right to complain of this prior refusal of the defendant's managers and agent as a ground for damages in the action. They elected to temporize and negotiate, rather than assert a matured right of action, and thereby waived that technical right, and for that they were defeated at the trial. There are no exceptions in the case to support the appeals, but they depend altogether on the action of the jury upon the evidence. That action is sustained by the facts the jury must have found were proved, and the judgment and order should be affirmed. All concur.